Benita Pereira, demandante y apelada, *v.* Santiago Ayuso, demandado y apelante.

Núm. 6887.—*Sometido:* Marzo 17, 1936. *Resuelto:* Mayo 19, 1937.

*Enrique Igaravídez,* abogado del apelante; *A. Rivas Rosario,* abogado de la apelada.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Éste era un pleito para anular una escritura de compraventa otorgada por Benita Pereira a favor de Santiago Ayuso, y para que se cancelara la inscripción de la misma en el registro de la propiedad. A su demanda intitulada "Inexistencia de contrato de venta, nulidad de escritura y cancelación de inscripción en el registro de la propiedad, etc." la demandante se enfrentó con una excepción previa. En la apelación interpuesta contra la sentencia dictada en favor de la demandante se señala como error el haberse declarado sin lugar la excepción previa. La médula de las objeciones del apelante consiste en la alegación de que la demanda deja de admitir en forma alguna que la demandante otorgara la escritura de enajenación, o de aducir los motivos que justifiquen un recurso sobre inexistencia de contrato. En el párrafo 10 de la demanda la demandante admite la existencia de la inscripción de una escritura que se supone haber sido otorgada por ella y en el párrafo 11 alega hechos que tienden fuertemente a negar que ella otorgara la escritura o jamás prestara su consentimiento a un contrato de venta, y aún más. El título del recurso en sí ayudaría a servir de guía al demandado. Quizá esto destruye suficientemente el ataque que se hace a la demanda. También tenemos una duda respecto a si el señalamiento es suficiente. Una excepción previa sólo necesita alegar que la demanda deja de aducir una causa de acción, pero el señalamiento debe ser más explícito.

Sin embargo, la demanda de todos modos bastaría para la cancelación de un contrato de venta y la cancelación incidental de la escritura y su inscripción. No hallamos incongruencia en el juicio, mas tal defensa hubiera sido más apropiada.

En cuanto a los méritos del juicio, la teoría de la corte fué que toda vez que la demandante era una anciana de más de noventa años de edad, el demandado debió haberle explicado cuidadosamente la naturaleza íntegra de la transac-

ción. La corte resolvió, en efecto, que debido a su decrepitud y a su mentalidad insuficiente, a ella nunca se le dió a entender que enajenaba su propiedad; que no se probó suficientemente la causa y que los testigos del demandado a veces se contradijeron a sí mismos y a veces entre sí. La escritura se suponía haberse otorgado en la notaría de Antonio Ayuso y en relación con el testimonio de este último la corte dijo: "Antes de continuar el análisis de esta prueba, queremos hacer constar que no tenemos duda alguna de que las cosas sucedieron en la forma que el notario ha explicado en su testimonio. . ." La corte, a nuestro juicio, se refería más especialmente a lo sucedido con el otorgamiento de la escritura, pues el juez procede a exonerar de responsabilidad al notario por haberla autenticado.

Parece conveniente revisar la prueba. Benita Pereira, la demandante, fué la primera que ocupó la silla de los testigos. Ella declaró que tenía más de noventa años de edad, y que era dueña de una casa en Santurce. Que conoció al demandado porque tenía dificultades en el cobro de las rentas a sus inquilinos y éste le fué recomendado por un amigo. Que ella le entregó la escritura de la casa y que más tarde él le manifestó que tenían que ir a San Juan; que fueron a una oficina donde había varios hombres, entre los que, ella creía, estaban el juez y el fiscal; que ella nunca supo de qué se trataba ni lo que él hizo y que nunca fué su intención vender la casa por habérsela dejado la hija de ella; que no sabe leer ni escribir; que nunca firmó nada ni autorizó a nadie para que firmara en su nombre; que el demandado a veces le daba medios pesos y pesetas y ocasionalmente pesos; que un mes después de su última visita a San Juan, el demandado la mudó de la casa de ella a una casa de él; que ella creyó que hacía eso para reparar la casa de ella; que él cobraba las rentas de la casa de ella y de ese dinero pagaba los alimentos suministrádosle. En la repregunta manifestó que no recordaba en qué se la trajo a San Juan; que no recuerda el número de personas que había allí; y que se le dejó sola

en una parte de la habitación mientras los demás se fueron a otra parte; que fué llevada allí en un automóvil que ella creía pertenecía al demandado; que el demandado la mantuvo durante varios meses en 1932 y que ella compraba su comida con el dinero que él le daba a ella.

El siguiente testigo de la demandante lo fué Rafael Rosado, quien dijo que tiene una tienda y que ha conocido a la demandante por espacio de doce años; que él cree que la casa de ella vale unos $800 y que ella ha comprado la mar de cosas de él y gastaba como $1.50 por semana en su establecimiento, suma que ella le pagaba regularmente . los sábados; y que ella dejó de comprarle en julio de 1932.

Antonia Pereira declaró que tenía 45 años de edad; que era sobrina de la demandante y que sabe que la demandante tiene o tenía una casa; que con frecuencia iba a visitarla; que la demandante se mudó en época posterior a julio de 1932; que en julio, 1932, la demandante le había dicho: "Toña, encontré un señor que me iba a comprar la casa y administrarla y alquilarla;" que la demandante le dijo que el nombre de este señor era Santiago Ayuso; que ella le dijo a la demandante que tuviera cuidado; que más tarde fué a ver al demandado y éste le dijo: "Ella es una señora anciana y algunos no le pagan, y yo voy a borrarle el nombre de la muerta y ponerla en la viva". Que él le dijo que iba a hacer esto con respecto al agua y las contribuciones; que la demandante se mudó durante el mes de julio, y los testigos la hallaron en una pequeña habitación donde ella le dijo a la testigo que el demandado iba a arreglar la casa; que la testigo más tarde habló con el demandado y le preguntó por qué había mudado a su tía de su casa, y éste le dijo que su tía disgustaba con los inquilinos; que su tía se trasladó nuevamente a su casa como unos cinco meses antes del juicio;. que el demandado ha destruído la palizada y el balcón que la casa tenía porque iba a construir en dicho solar.

Esto resume más o menos la prueba de la demandante.

El demandado mismo ocupó la silla de los testigos y

manifestó ampliamente cómo se le pidió que interviniera en los asuntos de Benita Pereira; que ella vivía en la casa objeto de la escritura, tenía inquilinos, pero que no podía llevarse ni con ellos ni con su propia familia; que transcurrido algún tiempo él la mudó a una de las casas de él y que más tarde alquiló una pequeña habitación para ella; y que finalmente, sin consultarle a él, ella se había mudado nuevamente a su propia casa, donde vivía en el momento en que se celebraba el juicio. De ninguna parte de la prueba aducida en el caso se desprende claramente cuánto recibía el demandado por concepto de rentas de los inquilinos que había en la casa de la demandante, en caso de que recibiera algo.

Incidentalmente, podría decirse, que la corte fué del criterio que Santiago Ayuso recibió, o debe imputársele el haber recibido, rentas de dichos inquilinos. La contención principal del demandado fué que había anticipado innumerables cantidades pequeñas a la demandante de tiempo en tiempo, pero que raras veces excedían, sin embargo, más de $2 por semana, y que él había pagado por ciertas cosas necesarias para ella en distintos establecimientos. Para la época del juicio el demandado sólo pudo presentar unas pocas cuentas y declaró que otras habían sido destruídas por el ciclón.

La dificultad que encontramos con toda esta prueba, podríamos decir de paso, es que el período durante el cual él estuvo exclusivamente a cargo de los asuntos de ella fué corto, es decir, desde fines de 1931 a junio o julio de 1932. El demandado dejó de hacer constar claramente que había pagado, a nombre de Benita Pereira, algo semejante a $300 que era el precio especificado en la escritura. Él pudo haber pagado una o dos sumas adicionales relativamente pequeñas para otros fines que no hemos mencionado.

El notario Antonio Ayuso declaró como testigo. Su declaración fué corroborada en ciertos puntos por su socio profesional Daniel Pellón, Jr.; por los testigos instrumentales y por la persona que firmó la escritura a nombre de la deman-

dante, puesto que ella no sabía leer ni escribir. Él dijo más o menos que recuerda la escritura en cuestión; que el demandado en este caso no tiene parentesco con él; y que el incidente relativo al otorgamiento de la escritura ocurrió así:

"Un día se presentó Santiago en la oficina y me dijo que había una viejita que él había estado ayudando, que le debía un dinero que le había dado en provisiones, y a veces medio peso, setenta y cinco centavos y un peso, y que él quería cobrarle a la viejita esos chavos. Pasaron unos cuantos días y me dijo: 'La viejita me quiere pagar a mí; tiene un lío ahí con la familia,' y se presentó un día. No recuerdo si vino primero uno y otro después. Allí estaba Mario Vissepó. Yo ya tenía preparada o preparé la escritura; no recuerdo la cantidad de dinero que se había anticipado a la vieja, me dijeron que unos trescientos pesos, porque me dijo que hacía tiempo le había ayudado. Vino entonces doña Benita Pereira con Santiago Ayuso. . .

. . . . . . . . .

"P.—¿Vinieron los dos?

"R.—Sí, señor, y un testigo, un tal Coto, que creo conocía a la vieja, y estaba don Mario allí, y la vieja relató allí una historia, que tenía una sobrina o un familiar que de ninguna manera quería que esa finca se la heredara la sobrina, o la tía o una hermana, no recuerdo bien la historia, y que el único familiar de ella era Santiago y que era el que la atendía y la mantenía a ella; que quien no le daba nada a ése no le dejaba nada; que la casita se la quería dar a Santiago Ayuso, que él la venía manteniendo, que era el que se ocupaba de ella, y que no quería cuentas más que con Santiago Ayuso; entonces llamé a don Mario Vissepó, y celebraron las cosas esas de la vieja, que decía unas cosas del espiritismo, entonces llamé a don Mario de testigo, y entonces él le preguntó: 'Vieja, ¿qué quiere Ud?' Y dice: 'Yo lo que quiero es pasarle la casa a Santiago Ayuso, que es quien me ha venido manteniendo. Éste es la familia mía. La otra familia no se ocupa de mí, y quiero pagarle.' Entonces le pregunté qué cantidad más o menos. Ella no sabía decir la cantidad de dinero. Le pregunté ¿serán cuatrocientos pesos, serán trescientos pesos? Entonces me dijo: 'Una cosa así.' Entonces le pregunté: ¿Cuánto más o menos?' (para calcular el dinero que le había dado, porque Santiago tampoco sabía exactamente la cantidad de dinero), entonces se fijó la cantidad de trescientos pesos. Creo que es lo que dice la escritura. No estoy seguro.

"P.—¿En qué forma se otorgó?

"R.—Yo le expliqué muy bien a la viejita la clase de transacción que se iba a hacer, por lo mismo que no sabía leer ni escribir; no solamente le leí eso sino que le expliqué: 'Esta casita Ud. se la va a pasar al señor Ayuso,' y me dice: 'Muy bien, muy bien.' 'Mire que la casa va a ser de hoy en adelante de él, no suya,' y me dice: 'Sí, señor. Yo lo que quiero es que la sobrina no se quede con ella, que me insulta y me ha querido pegar.' "

Bajo estas circunstancias, el problema no ha sido fácil. Sin embargo, conforme hemos visto, la corte concluyó que debido a su mentalidad insuficiente, la demandante nunca prestó consentimiento a la venta, y que si asintió, ella no obstante no entendió la naturaleza de la transacción. Aunque no hay prueba directa que tienda a demostrar que Benita Pereira tenía menos mentalidad que la acostumbrada en una persona de su edad, sin embargo, la corte podía verla y·oírla y tomar en consideración los testigos de ambas partes para llegar a su conclusión. El apelante mismo llama nuestra atención al supuesto testimonio vacilante de ella. Todo lo que hubiera pudo ser apreciado por la corte como tendente a demostrar decrepitud. Más especialmente cuando una persona de 93 ó 94 años está envuelta, cierta decrepitud es más frecuentemente la regla que la excepción y el testimonio tendió a sostener la regla. Por tanto, no creemos que en el análisis final podamos revocar la conclusión a que llegó el juez sentenciador.

■ La corte también creyó que no se demostró suficiente causa. Bajo ciertas circunstancias, la falta de una causa suficiente en casos similares al presente, basta para anular la venta, mas toda vez que se descansa en la ausencia de consentimiento, la cuestión relativa a la causa no es tan importante y no es necesario que discutamos más este punto.

*Hemos considerado directa o indirectamente los otros señalamientos de error y la sentencia debe ser confirmada.*

El Juez Asociado Señor Travieso no intervino.